UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,    :    13 Cr. 242 (SAS)

    -against-    :

LUZ FIGUEROA,    :

                Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANT FIGUEROA'S REPLY MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MEMORANDUM AND IN SUPPORT OF HER MOTION TO SUPPRESS HER POST ARREST STATEMENTS

Walter Mack, Esq.
Doar Rieck Kaley & Mack
217 Broadway, Suite 707
New York, New York 10007
(212) 619-3730
*Attorneys for Luz Figueroa*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA,            :      13 Cr. 242 (SAS)

      -against-                       :

LUZ FIGUEROA,                        :

             Defendant.        :

------------------------------------x

## PRELIMINARY STATEMENT

The defendant submits that notwithstanding the government's description in its memorandum of the early morning events at Apartment 3G as a step by step textbook exercise of an arrest warrant's proper execution, the record and testimony before Your Honor should not result in the Court's confidence that Ms. Figueroa freely and voluntarily waived her Fifth Amendment privileges during that chaotic morning. We urge that all her post arrest statements should be suppressed.

## ARGUMENT

We submit that the record before Your Honor reflects a distraught Criminal History I defendant undergoing extremely stressful conditions in her small apartment who was in no condition to comprehend the meaning and significance of Miranda Rights even if the Court were to credit an alleged oral presentation by Agent Marayag at 6:18 am. This is even if the Court were to discredit the defendant's credibility and sworn testimony. Let there be no doubt on this subject, we submit that the record clearly presents, when one fairly and objectively assesses the totality of the circumstances, an unitiated defendant under extreme circumstances and stress, who

believed that if she were to provide information to law enforcement, she could affect favorably the immediate disposition of her three young children, avoid the immediate arrest of her teenage daughter, Davasia, achieve lenient treatment for herself from the government, including avoiding the threat of a life sentence and protection from disclosure of her assistance to law enforcement. If those are not quid pro quo conditions designed to undermine the defendant's will and free choice, it is hard to fathom what more would be.

Even the government witnesses concede that defendant Figueroa may have had reason to perceive this as a quid pro quo situation. (Marayag, pp. 113-114, 128; Carbonell, pp. 143, 151-152; Kum, pp. 179-180, 185).

## INVOCATION OF COUNSEL

Although there is dissonance between the testimony of the defendant as to when and how many times Ms. Figueroa asked for legal counsel or for "Murray Richman," the defendant recounts two occasions (Tr. pp. 257-258); the FBI agents one (Marayag, pp. 85, 88-91; Kum pp. 165, 187-188).

Even if one were to accept that at some time prior to the trip to 26 Federal Plaza, proper Miranda Rights were given and Ms. Figueroa's statements were voluntary and her Fifth Amendment Rights had not been overborne by fear for the immediate care of her underage children, the threat of imminent arrest of her teenage daughter, Davasia, and/or a 'spiel' which threatened life imprisonment and total loss of her kids or leniency including promises not to reveal her cooperation in helping with the arrest of Ms. Soriano. I do not understand how the government can argue that these statements whenever perceived were not a clear, unambiguous request for the assistance of legal counsel. McNeil v. Wisconsin, 501 U.S. 171, 178 (1991).

Such a request if so characterized should have resulted in the cessation of interrogation, unless Ms. Figueroa were to reinitiate a criminal action related conversation. Miranda v. Arizona, 384 U.S. 436, 474 (1966). If anything, the record is clear that Agent Marayag simply continued to interrogate Ms. Figueroa on the trip to downtown. (Marayag, pp. 85-86; Kum pp.188-189). If the government's position is that a request to contact 'Murray Richman' or a lawyer only meant for legal counsel interaction in the future, perhaps at an arraignment, and the defendant was fair game until that future event, does not the sanctity of the Fifth Amendment, commonsense, and possible ambiguity, at least, require some follow-up questions to probe the defendant's intent or, at least, some evidence that she reinitiated the interrogation? United States v. Quiroz, 13 F.3d 505, 511 (2d Cir. 1993); Wood v. Ercole, 644 F.3d 83, 91-92 (2d Cir. 2011). There is no evidence in the record that either agent ever did so. (Marayag p. 91; Kum p. 191).

## CONCLUSION

For all of the foregoing reasons, along with those previously advanced in prior submissions, the motion to suppress should be granted.

Dated: New York, New York
October 29, 2013

Respectfully submitted,

_____
Walter Mack, Esq. (WM: 2586)
Doar Rieck Kaley & Mack
217 Broadway, Suite 707
New York, New York 10007
(212) 619-3730
*Attorneys for Defendant Luz Figueroa*

To: AUSA Jessica Ortiz
AUSA Ryan Poscablo
AUSA Jared Lenow
(via ECF filing and e-mail)